IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RESCO PRODUCTS, INC., | ) | |
|     Plaintiff, | ) | Civil Action No. 06-235 |
| | ) | |
| v. | ) | |
| | ) | |
| BOSAI MINERALS GROUP CO., LTD., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CMP TIANJIN CO., LTD., | ) | |
|     Defendants. | ) | |

## **MEMORANDUM OPINION**

CONTI, District Judge.

    An action was filed February 22, 2006 by Resco Products, Inc. ("plaintiff") alleging that defendants Bosai Minerals Group Co., Ltd. and CMP Tianjin Co., Ltd. ("defendants") entered into a conspiracy with the purpose and effect of fixing prices and controlling the supply of refractory grade bauxite, and committed other unlawful practices designed to inflate the prices of refractory grade bauxite sold to plaintiff and other purchasers in the United States and elsewhere. (Pl.'s First Am. Compl. (Docket No. 92) at 1.) Plaintiff submits these actions violated section 1 of the Sherman Act, 15 U.S.C. § 1.

    Two motions to dismiss were filed on October 7, 2009. The first motion to dismiss was a joint motion filed by defendants pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (Docket No. 98). The second motion to dismiss was filed by CMP Tianjin pursuant to Federal Rule of Civil Procedure 12(b)(2). (Docket No. 99). Plaintiff filed responses and defendants filed replies, and a hearing was held on January 21, 2010 regarding both motions to dismiss. The

court requested additional briefing with respect to a pending World Trade Organization ("WTO") proceeding, and the implications of the WTO proceeding on the application of the act of state doctrine. (Mot. to Dismiss Hr'g Tr. (Docket No. 130) at 49.) CMP Tianjin later withdrew the motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(2). (See Docket Nos. 140, 142.)

After considering the parties' supplemental briefs (Docket Nos. 127 and 131) with respect to the joint motion to dismiss, the court will stay the proceedings until July 21, 2010, at which time the parties will inform the court about the status of the pending WTO proceeding and the stay will be re-evaluated.

**A. WTO proceeding**

The pending WTO proceeding was initiated by the United States Trade Representative ("USTR") in its Request for the Establishment of a Panel by the United States, *China – Measures Related to the Exportation of Raw Materials*, WT/DS394/7 (Nov. 9, 2009). (Defs.' Reply to Pl.'s Opp'n to Defs.' Joint Mot. to Dismiss (Docket No. 123), Ex. 4 ("Panel Request").) In response to the Panel Request, the Dispute Settlement Body ("DSB") of the WTO established a single panel on December 21, 2009 to examine complaints by the United States and others concerning China's export restrictions on various raw materials, including bauxite. (Pl.'s Reply to Defs.' Supplemental Br. (Docket No. 131), Ex. 4 at 1.)

The USTR's Panel Request, among other things, alleges the following:

> China . . . imposes quantitative restrictions on the exportation of the materials [(including bauxite)] by requiring that prices for the materials meet or exceed a minimum price before they may be exported. Further, through its ministers and other organizations under the State Council as well as chambers of commerce and industry associations, China administers the price requirements in a manner that restricts exports and is not uniform, impartial, and reasonable.

(Panel Request at 6.) The USTR's Panel Request asserts that the actions are inconsistent with specific provisions of the General Agreement on Tariffs and Trade, Oct. 30, 1947, 61 Stat. A-11, 55 U.N.T.S. 194 ("GATT"), and the Protocol on the Accession of the People's Republic of China (WT/L/432) ("Accession Protocol"), which incorporates certain commitments of China contained in the WTO's Working Party Report on the Accession of China (WT/MIN(01)/3) ("Working Party Report"). (See generally Panel Request.)

Normally, a panel must conduct its examination of the complaints and issue a final report to the parties within six months. (Understanding on Rules and Procedures Governing the Settlement of Disputes, Apr. 15, 1994, Marrakesh Agreement Establishing the World Trade Organization, Annex 2, Legal Instruments – Results of the Uruguay Round, 33 I.L.M. 1125, 1226 (1994) ("DSU"), art. 12.8.) A panel's final report will "set out the findings of fact, the applicability of relevant provisions and the basic rationale behind any findings and recommendations that it makes." (DSU art. 12.7.) Parties to the dispute have a right under the DSU to appeal issues of law covered in the panel report and legal interpretations developed by the panel. (DSU art. 17.4, 6.) Parties may make written submissions to, and be given an opportunity to be heard by, an Appellate Body. (DSU art. 17.4.) Generally, "the period from the date of establishment of the panel by the DSB until the date the DSB considers the panel or appellate report for adoption shall . . . not exceed nine months where the panel report is not appealed or 12 months where the report is appealed." (DSU art. 20.) Finally, the DSU states that "where a panel or the Appellate Body concludes that a measure is inconsistent with a covered agreement, it shall recommend that the member concerned bring the measure into conformity with that agreement." (DSU art. 19.1.)

*Discussion*

**B. Motion to stay**

Defendants raised four major arguments in support of their joint motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6): (A) the act of state doctrine prohibits the court from declaring defendants' restrictions on the trade of bauxite unlawful, (B) the foreign sovereign compulsion doctrine provides immunity for defendants' actions, (C) the court should decline jurisdiction for reasons of international comity, and (D) the first amended complaint fails to state a claim.

The court suggested at the hearing on January 21, 2010 that a stay of the action until the WTO proceeding concluded might be appropriate. (Mot. to Dismiss Hr'g Tr. (Docket No. 130) at 10.) The court requested supplemental briefing "with respect to the import of the proceeding before the [WTO] and the act of state doctrine and how that applies [to this case]." (Id. at 49.)

Defendants raised five arguments in their supplemental brief: (A) in dispute resolution cases, the WTO issues detailed decisions including findings of fact and conclusions of law, (B) moving forward with this case while the WTO proceeding is pending creates a substantial risk of interference with the conduct of foreign policy of the executive branch, (C) the act of state doctrine compels abstention, (D) comity factors weigh heavily in favor of abstention, and (E) a stay is within the court's discretion. (Defs.' Supplemental Br. (Docket No. 127).)

Plaintiff raised four main arguments in its reply to defendants' supplemental brief: (A) the act of state and comity defenses are fact-based analyses that do not justify abstention at this point, (B) there is no genuine risk of inconsistent findings or rulings until the court is ready to make them, which should occur after discovery has clarified whether defendants were acting pursuant to a governmental mandate, (C) no court has stayed an otherwise valid action pending

4

the conclusion of WTO proceedings, and deference to the WTO is not required, and (D) a stay would prejudice plaintiff. The crux of issue concerning whether a stay should be ordered relates to the act of state doctrine, which will be addressed below.

### a. Act of state doctrine

The act of state doctrine "is the judiciary's institutional response to the foreign relations tensions that can be generated when a United States court appears to sit in judgment on a foreign state's regulation of its internal affairs." Environmental Tectonics v. W.S. Kirkpatrick, Inc., 847 F.2d 1052, 1057 (3d Cir. 1998). American courts are to refrain from judging "the validity of a foreign state's governmental acts in regard to matters within that country's borders." Id. at 1057-58. The burden of proving dismissal on the grounds of the act of state doctrine is on the moving party. Id. at 1058.

When considering the act of state doctrine, a court must be mindful of the extent to which, in the context of a particular dispute, separation of powers concerns may be implicated. Grupo Protexa, S.A. v. All Am. Marine Slip, 20 F.3d 1224, 1237 (3d Cir. 1994), cert. denied, 513 U.S. 986 (1994). The court in Grupo Protexa stated:

> [T]he court must determine whether there is evidence of a potential institutional conflict between the judicial and political branches such that a judicial inquiry into the validity of a foreign state's actions could embarrass the political branches in their conduct of foreign affairs. See [Environmental Tectonics, 847 F.2d at 1058]. This analysis "must always be tempered by common sense." [Allied Bank Int'l v. Banco Credito Agricola de Cartago, 757 F.2d 516, 521 (2d Cir. 1985)] (citations omitted). "'The less important the implications of an issue are for our foreign relations, the weaker the justification for exclusivity in the political branches.'" Id. (quoting [Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 428 (1964)]).

5

Id. The basis for this analysis is found in the underlying policy concerns of the act of state doctrine, which "focus on the preeminence of the political branches, and particularly the executive, in the conduct of foreign policy." Allied Bank Int'l, 757 F.2d at 520.

Defendants argue that price coordination and supply limits were mandated by China's export control regulations and policies. Under those circumstances, any alleged antitrust violation arguably was an act of state, and not a private conspiracy. Defendants claim that the Chinese organization responsible for the alleged antitrust violations is known as the China Chamber of Commerce of Chemical, Metals and Minerals Importers and Exporters ("CCCMC").

Defendants rely on an amicus brief filed by the Ministry of Foreign Commerce of the People's Republic of China in In re Vitamin C Antitrust Litigation, 584 F. Supp. 2d 546 (E.D.N.Y. 2008), for the proposition that the CCCMC, which is one of the Chinese chambers of commerce, "is a Ministry-supervised entity authorized by the Ministry to regulate . . . export prices and output levels, and the price 'coordination,' or so-called 'voluntary self-restraint,' it facilitated is a government-mandated price and output control regime." (Defs.' Mem. in Supp. of Joint Mot. to Dismiss (Docket No. 101), Ex. A at 3 ("Amicus brief").) Defendants allege that the CCCMC is under the direct supervision of the Chinese Ministry of Foreign Commerce, a government body with plenary authority to mandate export control policy, including supply and prices.

### b. The court's power to stay

The United States Court of Appeals for the Third Circuit has held that a district court has broad power to stay proceedings. Bechtel Corp. v. Local 215, Laborers' Int'l Union, 544 F.2d 1207, 1215 (3d Cir. 1976) (affirming stay in deference to the trial court's discretionary power to grant a stay). The "power to stay proceedings is incidental to the power inherent in every court

to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 299 (1936) (Cardozo, J.). Central to this power is a court's ability to "hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." Bechtel Corp., 544 F.2d at 1215. Of particular importance is that the issues and parties to the two causes need not be identical before one suit may be stayed to abide the proceedings in another suit. See Landis, 299 U.S. at 254. When two cases implicate similar facts or issues of law, the pending cause "may not settle every question of fact and law" in the current suit, but it may "in all likelihood . . . settle many and simplify them all." Id. at 256. Before exercising the power to stay proceedings, a court must weigh competing interests and maintain an even balance. Id. at 255.

Courts within the Third Circuit have weighed the competing interests of the parties in deciding whether to exercise the power to stay proceedings. Tellingly, courts have stayed proceedings in numerous cases where another pending action contained similar questions of fact or law. See, e.g., Cheyney State College Faculty v. Hufstedler, 703 F.2d 732 (3d Cir. 1983) (holding "that the district court did not clearly abuse its discretion in delaying the suit pending the potential resolution of some important issues in ongoing administrative proceedings"); Chartener v. Provident Mut. Life Ins. Co., No. 02-8045, 2003 WL 22518526, at *4 (E.D. Pa. Oct. 22, 2003) (granting stay for six months to abide the determination of a state court settlement agreement); Schwarz v. Prudential-Bache Sec., Inc., No. 90-6074, 1991 WL 137157, at *1 (E.D. Pa. July 19, 1991) (district court granted stay pending the settlement of a class action in which the plaintiff was a potential class member).[1]

---

[1] Plaintiff cites several decisions for the proposition that the court does not have the authority to grant a stay in a case to await the resolution of a pending WTO proceeding. See NSK Ltd., v. United States, 416 F. Supp. 2d 1334,

7

Several courts have identified the competing interests as: (1) the length of the stay; (2) the balance of harm to the parties; and (3) whether a stay will simplify issues and promote judicial economy. Gunduz v. U.S. Citizenship and Immigration Servs., No. 07-780, 2007 WL 4343246, at *1 (W.D. Pa. Dec. 11, 2007); see Smithkline Beecham Corp. v. Apotex Corp., No. 03-3365, 2004 WL 1615307, at *7 (E.D. Pa. July 16, 2004). Other courts have recognized five factors relevant to the balancing analysis:

> (1) The interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil . . . litigation.

Morgenstern v. Fox Television Stations of Phila., No. 08-0562, 2010 WL 678113, at **1-2 (E.D. Pa. Feb. 23, 2010) (holding case in abeyance pending the resolution of a bankruptcy proceeding

---

1337 (Ct. Int'l Trade 2006) (citing Timken Co. v. United States, 354 F.3d 1334, 1344 (Fed. Cir. 2004) and Corus Staal B.V. v. Dep't of Commerce, 395 F.3d 1343, 1348 (Fed. Cir. 2005)). The holdings in those decisions were based on the determination that the court was not required to treat the WTO's handling of a zeroing and antidumping policy as binding on its interpretation of United States statutory law. See, e.g. Corus Staal, 395 F.3d at 1346 ("[the Department of] Commerce is not obligated to incorporate WTO procedures into its interpretation of U.S. law"); Timken, 354 F.3d at 1344 (refusing to overturn the Department of Commerce's zeroing practice based upon a WTO Appellate Body decision; holding that the Department of Commerce's "longstanding and consistent administrative interpretation is entitled to considerable weight").

Each decision relied upon by plaintiff is distinguishable from this case. NSK Ltd. is distinguishable because the United States was a party to the case and opposed the stay – here the United States is not a party and does not challenge the stay. In Timken, the United States Department of Commerce calculated a weighted average based upon the dumping margins of a producer of roller bearings, and the Department of Commerce used the weighted average to assess duties upon the producer. The producer argued that the WTO issued a report prohibiting this practice. Timken, 354 F.3d at 1338-39. The WTO proceeding at issue, however, concerned a trade dispute between European nations and India, and the WTO's decision was not binding on the United States. Id. at 1343-44. The plaintiff in Corus Staal argued the Department of Commerce was in violation of its international obligations in light of three WTO decisions, one in which the United States was not a party. Corus Staal, 395 F.3d at 1348. The court in Corus Staal reviewed the decisions cited by the plaintiff and held those decisions were not relevant to the interpretation of a United States statute. Id. at 1349. Of significance is that, unlike the situation in this case, all the WTO proceedings in Corus Staal had concluded and a stay was not an issue. Here the United States initiated the WTO proceeding and advanced a position potentially adverse to plaintiff in this case. For the reasons stated above, the decisions plaintiff relies upon do not constrain this court in exercising its power to stay the proceedings.

to which the defendant was a party); see Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc., 87 F.R.D. 53, 56 (E.D. Pa. 1980) (granting limited pretrial discovery).[2]

Each balancing framework considers several overlapping factors, including the interests of and burdens on the parties, the length of the stay, and the interests of the court in promoting judicial efficiency. The court finds that the decision to stay these proceedings would not change regardless of which framework is applied to the facts of the case. For purposes of completeness, however, the court will weigh the interests of the parties under the five Golden Quality factors.

### i. Plaintiff's interest and potential prejudice

District courts should operate in a manner that ensures a just, speedy, and inexpensive determination of every action and proceeding. See FED. R. CIV. P. 1. This goal is facilitated when plaintiffs and defendants use the discovery procedures to determine the merit, or lack thereof, of a case and to develop a strategy to guide them through litigation. See Golden Quality, 87 F.R.D. at 56. Plaintiff argues that it is not necessary to stay this case pending the issuance of the report of the WTO dispute resolution panel because the court is not required to make any potential inconsistent findings of fact or conclusions of law until after discovery is completed. Plaintiff asserts that, consequently, discovery ought to continue and the court should deny the defendants' motion to dismiss as premature. Plaintiff submits that to stay the proceedings for six to twelve months would be prejudicial and would cause "more documents [to be] lost or discarded, witnesses [to] leave their companies, and memories [to] fade." (Pl.'s Reply to Defs.' Supplemental Br. (Docket No. 131) at 14.)

It should be noted that the issues before the court and those pending in the WTO proceeding are similar. The USTR alleged in its Panel Request that the Chinese government,

---

[2] While the court is aware that decisions to stay cases usually involve pending lawsuits and not pending WTO proceedings, the same universal principles relevant to granting a stay (i.e., judicial autonomy, judicial economy, and resolving similar issues) should apply by analogy in this case. See Landis and Bechtel discussed supra.

9

working through chambers of commerce, has been imposing restrictions on the exportation of bauxite by requiring that prices meet or exceed a minimum price before the material can be exported. Plaintiff argues alternatively that defendants have voluntarily entered into agreements to fix prices of bauxite before the material is exported, thereby controlling supply. The arguments of plaintiff and the USTR are similar in that they target a common method of price-fixing; where they differ is what entity is responsible for the price arrangements – the Chinese government or defendants.[3]

The difference in the position of plaintiff and the USTR focuses on factors that affect how the act of state doctrine should be applied in this case. Defendants argue that the act of state doctrine applies to this case because China is requiring the CCCMC to fix prices of bauxite before the material can be exported. If the panel determined that the United States is correct in its assertion that the Chinese government has been working through chambers of commerce to impose restrictions on the exportation of bauxite by requiring that prices meet or exceed a minimum price before the material can be exported, that finding may favor the defendants' arguments in this case. A contrary holding likewise could impact whether the act of state doctrine applies. While the court recognizes, and the parties do not dispute, that decisions adopted by the DSB are not binding, the findings of fact and conclusions of law made by the WTO panel may at the very least simplify the analysis of the act of state doctrine here.

Plaintiff's interest in pursuing discovery at this time does not outweigh other interests. To advance discovery now without a final determination in the pending WTO proceeding could lead the court to resolve the pending motion to dismiss or future dispositive motions in a manner

---

[3] Price-fixing is defined as "the artificial setting or maintenance of prices at a certain level, contrary to the workings of the free market." BLACK'S LAW DICTIONARY 1227 (8th ed. 2004). This definition appears to incorporate the alleged practices plaintiff complains about in this lawsuit and those which the USTR complains about in its Panel Request.

that may be inconsistent with the position of the USTR and the eventual decision rendered by the WTO panel. While not dispositive, the WTO panel's report may implicate separation of powers concerns, which would be appropriate for this court to consider in determining whether a decision by this court would interfere with the executive branch's conduct of foreign policy. See Grupo Protexa discussed supra. The court determines it is prudent under those circumstances to await the resolution of WTO proceedings in order to minimize the delicate separation of powers concerns at this juncture.

Mindful that proceedings should be carried out in a manner that ensures a just, speedy, and inexpensive determination of the action, the court does not agree with plaintiff's position that staying the proceedings for six to twelve months would be substantially prejudicial. It should be noted that the WTO panel was formed on December 21, 2009. A final report by the panel is likely to be made six months from that date – about June 21, 2010. If an appeal is taken, a final appellate report should be adopted by the DSB by December 2010. From the date of this order, the proceedings here will likely be stayed between two and seven months. If the court were to permit unfettered discovery, it is possible that a final report could be issued by the WTO before any significant progress is made in this case. Any prejudice to plaintiff caused by such a short delay is outweighed by the minimization of separation of powers concerns raised by the WTO proceedings.

### ii. Burden on defendants

Defendants argue that a stay in this case is warranted because a final report in the pending WTO proceeding could obviate further discovery, particularly concerning the act of state doctrine. Defendants submit that the court is within its power to abide the outcome of the WTO proceeding which may substantially affect this case or be dispositive of the issues. See Bechtel

discussed supra. The court agrees with defendants' position that substantial time, effort, and resources may be saved by exercising the court's broad power to hold this case in abeyance until a final report is adopted by the DSB. It does not comport with fairness or economy to allow the parties further discovery at this stage in the case, when the court believes such efforts could soon be proven wasteful. E.g., Golden Quality, 87 F.R.D. at 57 ("The mere possibility that a substantial amount of the court's work, if undertaken now, may shortly prove to have been unnecessary, cautions against undue haste in proceeding with this civil action"). This factor weighs in favor of defendants.

### iii. The burden on the court

The pretrial discovery phase is lengthy and complicated in private antitrust cases, especially in matters concerning international litigants. In weighing the interests of judicial economy in this case, the court considers the United States Court of Appeals for the Ninth Circuit's discussion in Chronicle Publ'g Co. v. Nat'l Broad. Co., Inc., 294 F.2d 744, 747-48 (9th Cir. 1961):

> We are . . . confronted with the prospect of two tremendously complex proceedings simultaneously assembling the same factual data in painstaking detail for the purpose of considering these facts from different points of view. The situation is one which cries out for the elimination of wasteful duplication of effort. If the mechanics of justice are not to be wholly overwhelmed by the steadily increasing burden of complex antitrust litigation, means must be found for easing that burden.

Staying the proceedings in this case for a period between two and seven months may reduce the duplication of effort between the WTO panel and this court, as the two proceedings involve overlapping facts with regard to the Chinese government's alleged involvement in price-fixing of exported bauxite.

12

### iv. Burden on nonparties

Neither party addresses in their briefing, and the court is not presently aware of, a burden on nonparties if this litigation were to advance at this time. This factor weighs in favor of granting the stay.

### v. The public interest

The public has an "interest in having private antitrust actions proceed expeditiously." Golden Quality, 87 F.R.D. at 58; see Phila. Hous. Auth. v. Am. Radiator & Standard Sanitary Corp., 269 F. Supp. 540, 542 (E.D. Pa. 1967) (stating that the strong incentive of treble damages "encourages private litigants to vigorously enforce the antitrust laws" and that "unwarranted stays of proceedings stymie and offset any incentive otherwise contained in the possibility of triple recovery"). The court cannot ignore, however, the United States' position taken before the WTO panel with regard to alleged price-fixing of bauxite in China. The United States, represented by the executive branch through the USTR, has an interest in making its case before the WTO panel.

Were this court to rule on the pending motion to dismiss or proceed with discovery, there may be duplication of effort by the parties here and the United States in the WTO proceedings, and there is a possibility for a conflict in decisions that may be avoided if a brief stay is issued. This potential conflict between the judicial and executive branches could implicate separation of powers concerns if decisions of this court were to embarrass the executive branch in the conduct of foreign affairs. See Grupo Protexa discussed supra.[4] The public interest in favor of advancing

---

[4] The court does not rule on whether the act of state doctrine or any other theory of abstention defendants assert would act as a bar to plaintiff's suit. There are unresolved issues that remain before those defenses can be properly addressed. The resolution of the pending WTO proceeding will likely shed light on those issues – a factor deserving substantial weight in the court's analysis of staying this case.

13

the USTR's position in the pending WTO proceeding supports a stay of this case until a final report is released by the WTO panel.

*Conclusion*

After considering the five Golden Quality factors, the court holds that this case will be stayed until July 21, 2010, at which time the parties will inform the court about the status of the pending WTO proceeding and the stay will be re-evaluated. The pending joint motion to dismiss (Docket No. 98) will be denied without prejudice and may be renewed when the stay is lifted.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Date: June 4, 2010